**UNITED STATES of America, Plaintiff,**

v.

**James David LUCAS, Defendant.**

**Crim. A. No. 92–CR–126.**

United States District Court,
D. Colorado.

Dec. 10, 1992.

---

FINDINGS, CONCLUSIONS,
AND ORDER

WEINSHIENK, District Judge.

The issue before the Court is defendant's Motion To Suppress Tangible Evidence and Statements. A hearing on defendant's motion was held on June 24, 1992, continuing on June 25, July 1, and July 6, 1992. The Court has made findings of fact and conclusions of law based upon the testimony taken at the suppression hearing and the briefs submitted by the parties. After careful consideration, the Court finds that defendant was initially detained on suspicion of an outstanding traffic warrant, but was never arrested pursuant to that warrant. The Court also finds that the search and seizure of defendant's bag took place without probable cause and was not incident to a lawful arrest. Accordingly, defendant's Motion To Suppress Tangible Evidence And Statements will be granted.

Not in dispute are the facts concerning how the officers were alerted to defendant's presence at a hotel near the Stapleton Airport in Denver, Colorado. The testimony given at the hearing indicates that on the morning of April 1, 1992, Detective Raymond Ayon of the vice and drug control bureau of the Denver Police Department received a call from Wayne Hoskins, the loss prevention director for the Stouffer Concourse Hotel near Stapleton Airport. (Record at 5–6, 174, 178). Mr. Hoskins' suspicions were aroused by defendant, who is black, because "he came in at a very early hour of the morning, asked for a club room, paid in cash, [and] didn't give any identification." (R. at 175). Detective Ayon responded to the hotel, accompanied by Detective Bernard Montoya who was also assigned to the vice and drug control bureau. (R. at 5–7, 178, 200). Detective Ayon subsequently called police headquarters and discovered that defendant had an outstanding warrant for a moving violation. (R. at 9, 178, 200–201).

Kathleen Tafoya, Guy Till, Asst. U.S. Attys., Denver, CO, for plaintiff.

Michael G. Katz, Federal Public Defender, Denver, CO, for defendant.

Also undisputed are certain facts concerning police surveillance of defendant after the officers learned that defendant was wanted on an outstanding traffic warrant. Shortly after arriving at the hotel, Detec-

tives Ayon and Montoya set up surveillance of the defendant in the hotel and its parking garage. (R. at 10, 201). Approximately two hours later, defendant and his wife were observed leaving through the front door of the hotel and driving their vehicle out of the hotel parking garage. (R. at 201–202). Several undercover police units followed defendant's car to an apartment complex located at 5955 E. 10th Avenue in Denver. (R. at 12, 202). Defendant and his wife parked their car and entered the apartment complex. A short time later, defendant, his wife, and an unknown black male exited the building and drove to a 7–Eleven store located at 16th and Colorado Boulevard. (R. at 12–13, 278). Detective Ayon and another officer contacted defendant as he stood at the pay telephone outside the 7–Eleven store. (R. at 15, 365–367). Defendant was asked by the officers if he was Raymond William, and acknowledged that his name was indeed Raymond William. (Id.) Defendant was allowed to return to his vehicle in order to retrieve his identification. (R. at 15–16, 367–369). At some point after he returned to vehicle to retrieve his identification, defendant's bag was searched and he was arrested for possession of marijuana and crack cocaine.

As a preliminary matter, the Court is convinced that the testimony at the suppression hearing shows that the Affidavit for Search Warrant sworn to by Detective Ayon contains numerous false and misleading statements. The Court finds that the false or misleading statements contained in the affidavit are that Mr. Hoskins told Detective Ayon that defendant was wanted by the police and was possibly in possession of a large amount of crack cocaine, that Detective Ayon was told by Detective Montoya that defendant had abruptly left the hotel, that defendant abruptly exited his vehicle at the apartment complex such that he could not be arrested, that defendant was placed under arrest for the outstanding warrant, that Detective Ayon observed in plain view a switch blade and marijuana in a side pocket of defendant's bag, that defendant told Detective Ayon in which apartment he had been, and that while securing defendant's apartment detective Brannan had seen in plain view a weapon on a countertop.

After considering the false statements in the warrant affidavit under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Court concludes that there is serious doubt that sufficient content remains in the warrant affidavit to support a finding of probable cause. In addition, the false statements in the affidavit reflect negatively on Detective Ayon's credibility as a witness. However, the Court concludes that the *Franks* issue need not be reached given the Court's findings that the initial search of defendant's bag was illegal, and that in the absence of this search, no probable cause would have existed to justify issuance of a search warrant for defendant's apartment.

The testimony of Detectives Ayon and Donald Brannon, in response to cross-examination by the Federal Public Defender, Michael G. Katz, indicates that Detective Ayon was more interested in investigating the possible drug trafficking activities of defendant than in arresting defendant on an outstanding traffic warrant.[1] Common

---

1. Detective Ayon's testimony as to why the officers did not attempt to make contact with defendant while he was at the apartment complex was as follows:

Q. So you didn't—you didn't execute that warrant at that time in part because you hadn't corroborated or confirmed that that warrant was still good at that point; correct?
A. It hadn't been verified at that point; correct.

. . . . .

Q. And in fact, you were interested in where Mr. William was going and whether or not he might be involved in some kind of drug activity; correct?

A. This is correct.
(R. at 64).
Testimony of Detective Brannan, an officer assigned to the vice and drug control bureau who was called in as part of the surveillance team on April 1, 1992, was as follows:

Q. Okay. Now, did you know—did you know that this was traffic warrant that you were following Mr. Raymond William on?
A. No, sir.
Q. At what point did you learn it was a traffic warrant?
A. I don't recall ever learning it. I was never briefed. When I found out they were under arrest, Detective Ayon advised me that

sense suggests that had the officers been interested primarily in the outstanding traffic warrant, they would have contacted defendant in his hotel room. Instead, the officers chose to conduct a roving surveillance of defendant involving several mobile units from the vice and drug bureau. The Court declines, however, to find that the initial stop of defendant was pretextual; reasonable officers who knew of an outstanding warrant may have made the stop for a valid purpose. *See U.S. v. Guzman,* 864 F.2d 1512, 1517 (10th Cir.1988). Thus, the controlling questions in this case are whether defendant was placed under arrest for the outstanding warrant and whether defendant's bag was lawfully searched.

■ The testimony at the suppression hearing depicts two very different versions of the nature of defendant's arrest and the timing of the search of defendant's bag. Detective Ayon's testimony as to whether he had placed defendant under arrest for

the outstanding warrant was contradictory. In response to initial questioning by Assistant United States Attorney Kathleen Tafoya, Detective Ayon testified that defendant was not placed under arrest for the outstanding warrant because it had not yet been verified.[2] In response to cross-examination by the Federal Public Defender, Michael Katz, Detective Ayon again testified that defendant was not immediately placed under arrest for the outstanding traffic warrant.[3] However, when Detective Ayon was confronted by Mr. Katz with his prior testimony at a preliminary hearing held on April 15, 1992, Detective Ayon changed his testimony to say that he had immediately placed defendant under arrest for the outstanding warrant.[4]

When questioned by Mr. Katz, defendant testified that he was not placed under arrest for the outstanding traffic warrant.[5] Defendant's testimony correlates with De-

they were under arrest for possession of cocaine.
(R. at 304).

2. Q. I just want to be sure we get this in order; okay? First you stop him, and that's based on what?
A. On an outstanding warrant that he had.
Q. Okay. Then you go to the car with him to get his verification, and you arrest him; and that is based on what?
A. That is based on the marijuana that was on plain view—in plain view.
Q. Is there a reason why it wasn't necessarily based on the warrant?
A. At that point, it wasn't based upon the warrant because the warrant hadn't been verified through—through the Courtroom 111.
(Record at 19).

3. Q. Okay. Now, it was my understanding that when you testified on direct examination that you put some qualification on that; in other words, whether he was actually under arrest. Did I miss—did I misunderstand that?
A. I approached Raymond William; and first of all, I asked him if he was Raymond William. He stated yes.
Q. Okay?
A. Advised him that he had an outstanding warrant and if he had any identification, at which time he walked back to his vehicle and went to retrieve same.
Q. But had you placed him under arrest?
A. Not at this point.
Q. So your testimony now in this court is that he was not placed under arrest when you first walked up to him at the pay phone?

A. When you say "under arrest," he was not handcuffed, he was not—
Q. Was he told, "You are under arrest"?
A. No.
(R. at 67).

4. Q. All right. Now, Detective, did you, when you walked up to Mr. William at the 7–Eleven and identified yourself and asked him if he was Raymond William, immediately place him under arrest, or not?
A. He was under arrest, whether the fact that cuffs were on him, whether he was allowed to walk back to his car; but for all intents and purposes, Mr. Raymond William was under arrest for that outstanding warrant.
Q. Did you tell him he was under arrest?
A. Yes.
(R. at 69)

5. Q. Now, let me stop you there. Did you know at that point that they were detectives?

A. No, they—the one detective, he put his badge over my left shoulder and announced who he was and asked me was I Raymond Williams? And I said yes.

Q. Go ahead?
A. He asked me did I have any ID.
Q. Now, at that time, were you told that you are under arrest?
A. No. No, I wasn't told I was under arrest.
(R. at 366).

tective Ayon's initial testimony about the arrest. In addition, testimony offered by both Detective Ayon and the defendant that he was allowed to walk with little or no restraint to his vehicle to retrieve his identification [6] also supports a finding that defendant was simply being detained for further investigation of the warrant, among other things. *See U.S. v. Merritt,* 695 F.2d 1263 (10th Cir.1982) (drawing and pointing of gun at suspect throughout stop does not transform investigatory stop into an arrest.); *U.S. v. Parr,* 843 F.2d 1228, 1231 (9th Cir.1988) (no arrest occurred when individual suspected of driving with a suspended driver's license was stopped, searched, and placed in patrol car.) After observing the demeanor of Detective Ayon and carefully considering the inconsistencies in his testimony, the Court finds that Detective Ayon's testimony that he placed

defendant under arrest on the outstanding warrant is not credible. The Court further finds that defendant was never placed under arrest for the outstanding traffic warrant but was instead being detained for investigation of the warrant.

■ In regard to the search of defendant's bag, Detective Ayon testified that as defendant reached into a pocket on the left side of the bag, he was able to look over defendant's right shoulder and observe in plain view marijuana and a knife contained in that pocket.[7] Detective Ayon also testified that upon seeing the contraband he immediately advised defendant that he was under arrest and read him his rights.[8] Defendant, on the other hand, testified that he was ordered to halt as soon as he began to reach into the center pocket of his bag.[9]

6. Q. (by Ms. Tafoya) At that point in time, was Mr. William in handcuffs or anything like that from the time that you approached him at the pay phone to when you're walking to the car?
A. He was not detained in any fashion.
Q. You didn't touch him or grab him or hold him or anything?
A. Not at all.
(R. at 15–16).
Q. (by Mr. Katz) Okay. Okay. Did anybody—did he ask you to get it, or did he direct you to get it, or—
A. No, they just asked me did I have any ID; and I told him yes, it was in the car. And he escorted me to the car.
Q. Okay. And—you weren't handcuffed?
A. No.
Q. He wasn't physically hurting you in any way?
A. No.
Q. Or using any force?
A. No.
(R. at 367).

7. Q. (by Mr. Katz) Now, where are you?
A. At this point, Sergeant McNallis is with me and I'm just basically over his right shoulder.
Q. Over the right shoulder toward the rear of the car?
A. Correct.
Q. And the compartment that's open is facing the driver's seat forward?
A. Correct.
(R. at 74)
Q. (by Ms. Tafoya) What happened, then, when you walked to the car?
A. Okay. At that time, Mr. William opened the door and reached in, in this blue bag; and

on the side—there was a side zipper bag. And looking over his shoulder, I could observe that there was a switchblade in there and also small packets, half dollar size packets of marijuana.
(R. at 16).

8. Q. (by Ms. Tafoya) All right. When you saw the switchblade and the what appeared to you to be marijuana, what did you do.
A. At that point, I immediately had placed with assistance—Sergeant McNallis—Raymond William, as we knew him at that point, under arrest.
Q. Does that mean you handcuffed him?
A. Correct.
Q. Did you say anything to him?
A. Just that he was under arrest for possession of—at that point, for possession of marijuana.
Q. All right. Was he read his rights at that time or anything like that?
A. Yes.
(R. at 16–17).

9. Q. (by Mr. Katz) Okay. Now what happened when you unzipped it?
A. Okay. I unzipped it; and when I put it inside, I remember sitting on the top—when I opened it there, it must have fallen to the side. So as I went to stick my hand in, Detective Ayon said, "Hold it. What's you going on?" And he threw me against the car and he handcuffed me.

. . . . .

Q. Would there have been any reason for you to go in the compartment that was facing the back of the driver's seat?
A. No, no reason. I knew where my ID was.
Q. Your ID was not in that compartment?

Defendant also testified that Detective Ayon immediately searched his bag and that this search took place before he was advised that he was under arrest for possession of marijuana and crack cocaine.[10] The Court observed the bag in question, the size of the packets of marijuana, and Detective Ayon and defendant's relative proportions and height. From these observations the Court was able to conclude that defendant appears to be at least eight inches taller than Detective Ayon and quite broad. The Court also observed Detective Ayon's demonstrations of the position of the bag at the time defendant reached into it, and finds that it would have been nearly impossible for Detective Ayon to see three half-dollar size packets of marijuana over the shoulder of defendant in a pocket facing away from his view. The Court finds that Detective Ayon's testimony that he observed contraband in plain view prior to the search of defendant's bag is not credible. It is the Court's conclusion that Detective Ayon fabricated the "plain view" explanation for his conduct in order to justify an illegal search. Further, the Court finds that the search of defendant's bag occurred prior to defendant's arrest for possession of marijuana and crack cocaine and was therefore not incident to a lawful arrest.

For all the reasons set forth in this Order, the evidence discovered as the result of the illegal search of defendant's bag must be suppressed. Because probable cause for the subsequent search of defendant's apartment would not have existed without the illegal search, the evidence discovered in the search of defendant's apartment must also be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, it is

ORDERED that defendant's Motion To Dismiss Tangible Evidence And Statements is granted.

A. No, it wasn't.
Q. And you're sure that compartment was zipped?
A. Yes, I'm sure.
(R. at 370).

10. Q. (by Mr. Katz) Now, when you were— were you handcuffed at that point?
A. I was told to—I was asked what I was going for and "halt" and handcuffed me and he searched me.

.    .    .    .    .

Q. Then what happened? What did he do with the bag?
A. He grabbed the bag out of the car and he placed it on the trunk of the car.
(R. at 371).

.    .    .    .    .

A. He went through this compartment here. He says, "Oh, you got marijuana in here."

And he said, "And what is this," which, referring to the knife, he pushed the button on the knife and the knife popped out of his hand on the ground. And he said, "It's a switchblade," and asked me where did I get it from.
Then he went into the middle compartment and he started pulling my clothes out. And then he pulled my ID out and he said, "Is this your bag?"
And I said "Yes. You have my ID."
And he says, "Well, this must be your candy." (referring to suspected crack cocaine).
(R. at 372).
Q. (by Mr. Katz) Were you placed under arrest that—
A. I was placed under arrest. Also my wife and Ben Stevenson.
Q. In other words, you were formally advised you were under arrest at that point?
A. Yes.
(R. at 373).