**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jamieson Dillon FOSTER, Defendant–Appellant.**

No. 02–30148.

**E.D. Wash. CR 01–188–FVS.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 2003.

Decided June 23, 2003.

**416**

Before D.W. NELSON, THOMAS, Circuit Judges, and D. PREGERSON,* District Judge.

MEMORANDUM**

Jamieson Foster appeals the district court's denial of his motion to suppress under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

* The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

Before interrogating a defendant in custody, police officers must advise the individual of his *Miranda* rights. *Miranda,* 384 U.S. at 479. A person is "in custody" when, based upon a totality of the circumstances, a reasonable person in such circumstances would conclude that he or she was not free to leave. *United States v. Kim,* 292 F.3d 969, 973–74 (9th Cir.2002). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been ... deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444.

Typical traffic stops are non-custodial for the purposes of *Miranda, Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Similarly, *Terry*-stops, executed by police officers with a reasonable belief that a person has committed, is committing, or about to commit a crime, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), are also non-custodial for the purposes of *Miranda. United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). *Terry*-stops entail detaining a person briefly in order to provide the officers with the time necessary to investigate the circumstances that provoked their suspicion. *Id.* "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer,* 468 U.S. at 439.

In assessing whether Mr. Foster was "in custody," the only relevant inquiry is whether "a reasonable man in [Mr. Foster's] position would have understood his situation" to be one of police custody. *Id.* at 442. In looking at the "totality of the

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

circumstances," we should consider: (1) the language and method used by the officers to summon Mr. Foster, (2) the extent to which Mr. Foster was confronted with evidence of guilt, (3) the physical surroundings of the interrogation, (4) the duration of the detention, and (5) the degree of pressure applied to detain Mr. Foster. *See Alvarado v. Hickman,* 316 F.3d 841, 846 (9th Cir.2002).

Although the officers initially possessed sufficient cause to execute a valid *Terry*-stop of Mr. Foster, the nature of the officers' comments and accusations that followed take this case outside the recognized boundaries of a non-custodial *Terry*-stop and into one of police custody. *See Kim,* 292 F.3d at 976 ("If [the officers] had asked questions going beyond a brief *Terry*-type inquiry, [Mr. Foster] would, it appears, have been entitled to *Miranda* warnings.") (internal citation omitted).

Here, Mr. Foster (1) did not come to the police voluntarily but was stopped by a combined unit of four armed federal and local officers on a remote rural highway in Washington; (2) had three police and Border Patrol vehicles positioned in single file behind him; (3) was accused by the officers of being dishonest and engaging in the trafficking of illegal narcotics; (4) was informed that the officers had discovered a large quantity of illegal drugs nearby and that they believed he was in the area to pick it up; (4) had his driver's license and car registration seized; and (5) was pressured by the officers to be "honest" and to confess that the marijuana belonged to him. Under these circumstances, no reasonable person would have concluded that he or she was free to leave.

When Mr. Foster was accused by the officers of having perpetrated a serious felony in violation of federal law, the officers were no longer executing a non-custodial *Terry*-stop to investigate whether Mr.

Foster was attempting to commit or had committed a crime. Rather, a reasonable person in Mr. Foster's position would assume that he was being held, not for the purposes of investigation, but because he was under arrest. As noted by the Supreme Court, "An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned." *Stanbury v. California,* 511 U.S. 318, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Here, Mr. Foster was explicitly accused by an officer of intending to perpetrate and participate in a conspiracy to traffic illegal narcotics into the United States.

Accordingly, we hold that Mr. Foster was in police custody and should have been advised of his *Miranda* rights prior to being questioned. The district court's denial of Mr. Foster's motion to suppress is **REVERSED**; Mr. Foster's conviction is **VACATED**; and we **REMAND** for a new trial.

THOMAS, Circuit Judge, dissenting.

Were this a typical "traffic stop" case, I would agree with my colleagues that reversal would be required. However, Foster was not stopped for a purported traffic violation; he was stopped because law enforcement officers reasonably suspected him of a narcotics violation. Therefore, I view the officers' actions as a justifiable *Terry* stop, and therefore non-custodial for *Miranda* purposes. Accordingly, I respectfully dissent.

There are significant analytical differences between a true *Terry* stop and traffic stop. *Berkemer v. McCarty,* 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Under the doctrine announced in *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a law enforcement officer may briefly detain a person for investigatory purposes if he or she has

a reasonable suspicion supported by articulable facts that criminal activity is afoot. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). It is well-settled that a routine *Terry* stop is not "custody" triggering the need for *Miranda* warnings, even though, of course, the suspect is briefly detained and hence not actually free to leave. *See United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir.2001) ("The case books are full of scenarios in which a person is detained by law enforcement officers, is not free to go, but is not 'in custody' for *Miranda* purposes."); *see also United States v. Galindo–Gallegos*, 244 F.3d 728, 731 (9th Cir. 2001); *United States v. Parr*, 843 F.2d 1228, 1230–31 (9th Cir.1988); *United States v. Bautista*, 684 F.2d 1286, 1291 (9th Cir.1982).

*Miranda* warnings are not required for a "brief stop and inquiry that are reasonably related in scope to the justification for their initiation." *United States v. Kim*, 292 F.3d 969, 976 (9th Cir.2002). *Berkemer* describes the relationship between a *Terry* stop and *Miranda* custody as follows:

> Typically, [a *Terry* stop] means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*.

468 U.S. at 439–40.

In short, in a prototypical *Terry* stop, the person detained is actually not free to leave during the initial questioning; thus, an inquiry as to whether he felt free to leave when stopped is not crucial to the analysis. The central issues are whether (1) officers had a reasonable suspicion of criminal activity supported by articulable facts and (2) whether the questioning exceeded the bounds of permissible *Terry* stop questioning.

Here, law enforcement officials discovered three hockey bags of marijuana lying on the side of a highway. While watching the site to apprehend those attempting to retrieve the contraband, officers observed Foster clearly engaging in behavior that engendered a reasonable suspicion that he was connected with the bags of marijuana found on the side of the road. Upon first passing the spot where the marijuana had been, Foster turned around and drove back by the spot, slowing down as he did so. He then circled around to twice more pass the spot before stopping his car on the highway to get out and survey the spot through the lense of his camera. He next drove on and circled around twice more, before getting out and heading toward the area where the marijuana bag had been found. Upon returning to his vehicle he made a U-turn to drive pass the spot once more before driving back in the opposite direction from which he had originated. Thus, the officers here had "a particularized and objective basis" for suspecting Foster of legal wrongdoing. *See United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

A detention does not become custody until "a suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer*, 468 U.S. at 440. In this case, the initial questioning lasted for no more than 10 minutes. During the initial detention, the officer asked Foster where he was from and where he was going. After learning that he was from British Columbia, the origin of the "B.C.

Bud" variety of marijuana found in the bags, and receiving evasive answers about Foster's destination, the officer told him he believed that Foster was looking for the marijuana. Given that it is was a reasonable suspicion of Foster's involvement with the marijuana that prompted the stop in the first place, this inquiry was clearly related in scope to the justification for its initiation.

The officer questioning Foster approached the vehicle alone and did not have his weapon drawn. The other law enforcement officers in the area likewise had their weapons holstered. Foster was not removed from his vehicle; nor was he handcuffed. Foster asked the interrogating officer if the officer were going to arrest him, and was told that the officer would not unless he found marijuana in his vehicle or on his person. A reasonable person would infer from this answer that he was not currently under arrest.

If Foster had been the subject of a routine traffic stop absent a reasonable law enforcement suspicion that he was involved in a criminal narcotics violation, I would agree with the majority. However, here, officers had reasonable suspicion that Foster was involved in specific criminal activity. They stopped him and asked him legitimate questions about his actions. From these facts, I conclude that this was a classic *Terry* situation, that the officers did not exceed the bounds of the questioning permitted by *Terry*, and that *Miranda* warnings were not required under the circumstances.

I would affirm the conviction.