**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald Newbren MORGAN,
Defendant-Appellant.**

No. 85–1319.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1986.

Decided Aug. 19, 1986.

John Kennedy, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Robert M. Holley, Asst. Federal Public Defender, Sacramento, Cal., for defendant-appellant.

Before PREGERSON, POOLE, and NOONAN, Circuit Judges.

PREGERSON, Circuit Judge.

Donald Morgan appeals his conviction for unarmed robbery of a savings and loan in violation of 18 U.S.C. § 2113(a). The district court denied Morgan's motion to suppress evidence obtained through a warrantless search prior to formal arrest. The district court concluded that the search was valid as incident to arrest because, before the search occurred, the police officer had probable cause to arrest Morgan. We affirm.

## BACKGROUND

On June 6, 1985, a savings and loan in Marysville, California was robbed. The tellers at the savings and loan described the robber as a white male over six feet tall, wearing a plaid shirt, of medium build, with blue eyes, unkempt brown hair and beard, and with an odor of wine about his person. Based upon the robber's appearance and odor, the tellers concluded that the robber was a transient. Witnesses followed the robber to an area of Marysville known as the "river bottom," which serves as a hobo camp for transients. That evening, a cab driver reported to Marysville Police Officer Nason that he had heard the description of the robber on his scanner radio and had taken a passenger matching the robber's description from near the river bottom area to Veda's Motel in Yuba City. Nason communicated this information to Yuba City Police Sergeant Conklin and Police Officer Cotton, who both accompanied Nason to Veda's Motel. All three officers were in uniform and armed.

The motel manager confirmed that a person answering the robber's description had recently checked in, and gave Nason the suspect's room number. Cotton stationed himself behind the motel to cover the rear windows. Conklin and Nason then went to the suspect's room. Nason knocked on the door and Morgan answered. Nason explained to Morgan that they were investigating the savings and loan robbery and asked Morgan's permission to enter the room. Morgan unchained the door and allowed the officers into the room. Nason then asked whether he could look around the room and Morgan consented. While Nason briefly searched the room and the bathroom, Conklin remained inside the room between Morgan and the door. The district court found that, at this time, Morgan was not free to leave the motel room. The search yielded nothing of evidentiary value.

Conklin observed a bulge in Morgan's pocket, and, fearing that Morgan might be armed,[1] conducted a pat-down search. In conducting the pat-down, Conklin squeezed the bulge in Morgan's pocket to make sure it was not a weapon. Conklin asked Morgan what the bulge was, and Morgan replied that it was "my money." Conklin testified that he accepted Morgan's explanation that what he had felt was a roll of money and not a weapon. Conklin then reached into Morgan's pocket and pulled out a large roll of money with a $100 bill secured around the outside by a rubber band. Conklin asked Morgan how much money there was, and Morgan replied that there was around $1300. When asked where the money came from, Morgan stated that he had quit his job and had cashed a check at a bank in Santa Barbara. Nason asked Morgan whether he had been in Marysville that day and whether he had taken a cab from Marysville to the motel. Morgan answered "no" to both questions.

Nason then asked Morgan if he would accompany the officers to the Marysville Police Department for fingerprinting and photographing. Morgan asked if he was under arrest and Nason told him that he was not. Morgan replied that if he was not under arrest, he would prefer not to go to the Police Department. Nason then arranged for the cab driver to come to the motel. When the cab driver arrived, he identified Morgan as the man he had driven from Marysville earlier that day. At that point, Nason formally arrested Morgan.

Nason then requested Cotton to take Morgan down to the police car. By radio, Nason asked Cotton to "Mirandize" Morgan, and also indicated that there was still some money missing. Informed of his rights, Morgan told Cotton that he did not want to make a statement. Cotton then removed Morgan's wallet and found money that was later determined to be "bait" money from the robbery.

At trial, Morgan argued that there was no probable cause for his arrest, and moved to suppress the money obtained from the search of his pocket in the motel and all other incriminating evidence that followed the search and arrest. The district court denied Morgan's motion. Morgan entered a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2), and was subsequently sentenced. Morgan timely appealed.

## STANDARD OF REVIEW

The district court's conclusion that Conklin had probable cause to arrest Morgan at the time of the warrantless search is a mixed question of law and fact which we review *de novo*. *United States v. Fouche*, 776 F.2d 1398, 1403 (9th Cir.1985). However, we review only for clear error the factual findings on which the district court based its conclusion of probable cause. *United States v. Merriweather*, 777 F.2d 503, 505 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1497, 89 L.Ed.2d 898 (1986).

## ANALYSIS

The fourth amendment generally requires that police officers obtain a search

---

1. The robber had simulated the use of a weapon in the savings and loan robbery.

warrant before searching a suspect's person or property. Conklin did not have a warrant to search Morgan's person. To uphold the search, therefore, some exception to the warrant requirement must apply. *United States v. Al-Azzawy,* 784 F.2d 890, 894 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986).

Before the district court, the government argued that Conklin's search of Morgan's pocket was either a consensual search or a valid pat-down sanctioned by *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). The district court rejected both asserted justifications and the government does not press either here on appeal. Rather, the government urges us to accept the district court's rationale that Conklin had probable cause to arrest Morgan before the search, and that Conklin seized the money pursuant to a valid search incident to arrest.

*Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969), established that a police officer may conduct a warrantless, full search of a suspect's person incident to a lawful arrest. The precise timing of the search incident to arrest is not critical. In *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), officers discovered controlled substances that Rawlings claimed to be his. The officers then searched Rawlings and found cash and a knife in his pocket. *Id.* at 101, 100 S.Ct. at 2559. The Supreme Court upheld the seizure of the knife and cash as a valid search incident to arrest. "Once [Rawlings] admitted ownership of the sizable quantity of drugs found in Cox's purse, the police clearly had probable cause to place [Rawlings] under arrest. Where the formal arrest followed quickly on the heels of the challenged search of [Rawlings'] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Id.* at 111, 100 S.Ct. at 2564.

■ Of course, an arrest that follows a search must be supported by probable cause independent of the fruits of the search. *See Rawlings,* 448 U.S. at 111 n. 6, 100 S.Ct. at 2564 n. 6; *Sibron v. New York,* 392 U.S. 40, 63, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). Thus, here, the role of money and all other evidence obtained from Morgan as a result of Conklin's search may not be used to establish probable cause for Morgan's arrest. Therefore, in reviewing the validity of the search we must decide whether Conklin had probable cause to arrest Morgan *immediately before* the search.

Probable cause is a practical, nontechnical concept. *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). Conklin had probable cause to arrest Morgan if "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability" that Morgan had committed a crime. *United States v. Smith,* 790 F.2d 789, 792 (9th Cir.1986). *See also Illinois v. Gates,* 462 U.S. 213, 230–46, 103 S.Ct. 2317, 2328–36, 76 L.Ed.2d 527 (1983) (applying "totality of the circumstances" test to probable cause determination).

■ We think Conklin had probable cause to arrest Morgan before he searched Morgan's pocket. Morgan's physical appearance and odor conformed closely to the tellers' general description of the robber of the savings and loan. The officers' consented-to search of Morgan's room revealed a wine bottle, a few personal possessions and no luggage, all consistent with a conclusion that Morgan was a transient. Conklin knew that the taxi driver had identified the person he had taken to the motel as someone who closely matched the tellers' description of the robber. The motel manager had made a similarly positive identification. Conklin also knew that the taxi driver had taken his fare from near the river bottom area, where the suspect had been last seen heading, to Veda's Motel. Finally, in a justified pat-down, Conklin had squeezed the large bulge in Morgan's pocket, and had accepted Morgan's explanation that it was money. From his experience, Conklin could reasonably conclude that

Morgan had a substantial sum, and that it was improbable, though admittedly not impossible, that someone of Morgan's appearance would have acquired that much money lawfully. Given the totality of the circumstances—the taxi driver's assertion that his fare's description matched that of the robber, the motel manager's independent corroborating identification, Morgan's appearance and odor, the absence of luggage, and Morgan's possession of a substantial cash sum—Conklin, at that moment, had sufficient probable cause to arrest Morgan for the savings and loan robbery.

That the officers did not formally arrest Morgan at once but waited for the additional corroboration of the taxi driver shows commendable caution on their part. However, it does not vitiate the presence of sufficient probable cause to justify an arrest earlier than the officers apparently considered appropriate in the circumstances. Because we conclude that Conklin in fact had probable cause to arrest Morgan before he removed the money from Morgan's pocket, the search was valid under *Rawlings* as incident to an arrest. The money found in Morgan's pocket was, therefore, admissible as evidence.

Apart from the money Conklin took from Morgan's pocket, Morgan also sought to suppress three other items of evidence. The discovery of the bait money and the bank tellers' later identifications of Morgan both occurred after the officers had formally arrested Morgan and warned him of his *Miranda* rights. Because we conclude there was probable cause to arrest Morgan earlier than the formal arrest, this evidence, *a fortiori*, must be admissible. The government stipulated to the district court that Morgan's statements made immediately after Conklin seized the money were inadmissible as they occurred before Cotton had administered the *Miranda* warning to Morgan. There is ample evidence to support Morgan's conviction without these statements.

AFFIRMED.