UNITED STATES of America,
Plaintiff–Appellee,

v.

Steven Michael PARR,
Defendant–Appellant.

No. 86–3224.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1987.

Decided April 7, 1988.

Daniel G. Hoarfrost, Portland, Or., for defendant-appellant.

Mervyn Hamburg, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GOODWIN and SKOPIL, Circuit Judges, and THELTON E. HENDERSON,* District Judge.

* Honorable Thelton E. Henderson, United States District Judge, Northern District of California, sitting by designation.

SKOPIL, Circuit Judge:

Defendant-appellant Steven Parr was charged and convicted of possessing stolen mail in violation of 18 U.S.C. § 1708 (1982). On appeal he argues that the stolen mail, discovered and seized by a municipal police officer during a routine vehicle stop, should have been suppressed. We agree that the warrantless search of Parr's car and subsequent seizure of the contraband were unlawful and that the evidence should have been suppressed. We reverse and remand on that ground. We do not reach Parr's other contentions that the district court committed several evidentiary errors during trial and failed properly to instruct the jury.

## FACTS AND PRIOR PROCEEDINGS

In the early morning of May 15, 1986, Steven Parr was stopped and detained by a Portland police officer. The officer stopped Parr because he suspected Parr was driving with a suspended driver's license. As the officer was stopping Parr, he noticed Parr and a companion in the car bend towards the floorboard and "make furtive movements." The officer attributed Parr's attention to the floorboard as the cause of Parr driving partially up on the sidewalk before stopping.

After stopping Parr, the officer asked him to exit the car. Parr was searched and placed into the patrol car. The officer returned to Parr's car and asked the passenger to exit. She was also searched. The officer then noticed a small red leather bag, zipped closed, and a blue nylon gym bag, also zipped closed, lying on the front floorboard. He removed both from the car and opened them. The leather bag was a "narcotics kit" containing syringes, spoons, cotton, and gram scales. The gym bag contained a sawed-off shotgun, a shotgun shell, and stolen mail.

Parr was read his *Miranda* rights and cited for the state crimes of Unlawful Possession of a Firearm, Or.Rev.Stat. § 166.250, and Driving While Suspended, Or.Rev.Stat. § 487.560 (now § 811.175). The officer seized the bags and their contents. The entire stop, search and detention lasted one half to three quarters of an hour. Parr and his companion were then released.

Several months later Parr was arrested by federal officers for possession of the stolen mail that had been seized by the Portland police officer. Parr sought to suppress the physical evidence seized from the car, contending that the warrantless search could not be justified. The trial court upheld the search as lawful, incident to Parr's arrest.

## DISCUSSION

Under federal law [1] searches incident to arrest constitute a traditional exception to the warrant requirement of the fourth amendment. *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973). As the exception applies to automobiles, the Supreme Court has held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (footnotes omitted). The search may include examination of the contents of any closed containers within the passenger compartment. *Id.; United States v. Basey*, 816 F.2d 980, 991–92 (5th Cir.1987).

There is no question in this case that the officer had the discretionary authority to arrest Parr. *See* Or.Rev.Stat. § 133.130(10)(g) (authorizing arrest for violation of Or.Rev.Stat. § 811.175). The validity of a discretionary full custody arrest and search incident to that arrest for minor

---

**1.** Parr contends that the trial court erred in applying federal law instead of state law in ruling on his suppression motion. He argues that state law should govern because the search and the seizure were carried out by a state officer subject to the restraints of state law.

While that question was an open one at the time of Parr's trial, we have recently decided that federal law applies. *See United States v. Chavez–Vernaza*, 834 F.2d 1508, 1513 (9th Cir.1987); *United States v. Joseph*, 829 F.2d 724, 728 n. 1 (9th Cir.1987) (dictum).

traffic offenses has been upheld. *Gustafson v. Florida,* 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973); *United States v. Franklin,* 728 F.2d 994, 997 (8th Cir.1984). We also believe there was probable cause for the officer to believe that Parr was violating the law by driving while suspended. The officer had cited Parr earlier for driving while suspended and had recently checked Parr's record.

■ Nonetheless, it is not clear that the police action taken here is the type of "custodial arrest" necessary to support a search incident to arrest. *See Belton,* 453 U.S. at 461, 101 S.Ct. at 2864 (requiring "lawful custodial arrest" to support contemporaneous search of automobile incident to that arrest). Certainly, there is no per se rule that detention in a patrol car constitutes an arrest. *See United States v. Kapperman,* 764 F.2d 786, 792 (11th Cir. 1985) (no arrest when police moved defendant to nearby area in patrol car); *United States v. Manbeck,* 744 F.2d 360, 377–78 (4th Cir.1984) (no arrest when suspect placed in back of patrol car), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985).

The Seventh Circuit recently reasoned that "sitting in the patrol car for several minutes was merely a normal part of traffic police procedure for identifying delinquent drivers" and did not constitute custodial arrest. *United States v. Rodriguez,* 831 F.2d 162, 166 (7th Cir.1987). We reached essentially the same conclusion in *United States v. Thompson,* 597 F.2d 187, 190 (9th Cir.1979). There we held that the defendant's failure to produce a valid driver's license "justified the request that he get out of his car and sit in the police car while a standard police identification process took place." *Id.* Because the defendant was not under arrest at the time of the search, we concluded that the search was unlawful. *Id.* at 191.

In *United States v. Gonzalez,* 763 F.2d 1127, 1130 n. 1 (10th Cir.1985), the court noted that the distinction between custodial arrests and traffic arrests is critical "because the label used for constitutional purposes defines the scope of reasonable police conduct incident to such a [traffic] stop." The court reasoned:

> If such a traffic stop were like a traditional custodial arrest, then as part of the search incident to arrest the apprehending officer could search the entire passenger compartment. But if, as we conclude here, the traffic stop only amounts to an investigative detention, the officer's freedom to search is more limited; his motivation for the search must be related to concern for protecting himself or others rather than any concern with preserving evidence.

*Id.* (citations omitted). Similarly, in *United States v. Robinson,* 471 F.2d 1082, 1096 (D.C.Cir.1972), *rev'd on other grounds,* 414 U.S. 218, 94 S.Ct. 494, 38 L.Ed.2d 427 (1973), the D.C. Circuit noted the important distinction between " 'routine' traffic arrests—where the officer simply issues a notice of violation and allows the offender to proceed—and the more serious cases in which the officer effects an 'in-custody' arrest...." The court concluded that "the permissible scope of searches incident to routine traffic arrests, where there is no evidentiary basis for a search and where the officer intends simply to issue a notice of violation and to allow the offender to proceed, must be governed by [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ]." *Id.* at 1097. The Supreme Court concluded, however, that the defendant had been placed in "full-custody arrest" and therefore expressly declined to reach the issue of whether the search might have been unlawful if the incident were "characterized as 'a routine traffic stop,' i.e., where the officer would simply issue a notice of violation and allow the offender to proceed." *Robinson,* 414 U.S. at 236 n. 6, 94 S.Ct. at 477 n. 6.

The Court subsequently addressed whether a traffic arrest triggers the requirements of *Miranda. See Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984). While acknowledging that traffic stops are seizures for fourth amendment purposes, the Court held that such seizures are "presumptively temporary and brief" and are therefore

"more analogous" to *Terry* stops. *Id.* at 437–39, 104 S.Ct. at 3148–49. The Court did caution, however, that "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda.*" *Id.* at 440, 104 S.Ct. at 3150.[2]

Whether Parr was subjected to treatment that rendered him in "custody" is, of course, the determinative question. There is clearly no mechanical checklist to distinguish between *Terry* stops and formal arrest or the equivalent of arrest. *See United States v. Quinn,* 815 F.2d 153, 156 (1st Cir.1987); *United States v. Jones,* 759 F.2d 633, 636 (8th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985). Our review is de novo, *United States v. Kerr,* 817 F.2d 1384, 1386 (9th Cir.1987), and turns on the particular facts and circumstances of each case. *United States v. Rubies,* 612 F.2d 397, 404 n. 8 (9th Cir. 1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980).

There is "no bright-line for determining when an investigatory stop crosses the line and becomes an arrest." *United States v. Hatfield,* 815 F.2d 1068, 1070 (6th Cir. 1987). Nevertheless, a distinction between investigatory stops and arrests may be drawn at the point of transporting the defendant to the police station. *See, e.g., Hayes v. Florida,* 470 U.S. 811, 816, 105 S.Ct. 1643, 1646, 84 L.Ed.2d 705 (1985) (line between investigatory detention and arrest is crossed when police transport suspect to police station); *Dunaway v. New York,* 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed. 2d 824 (1979) (arrest occurs when suspect is seized and transported to the police station for interrogation); *United States v. Hernandez,* 825 F.2d 846, 851 (5th Cir.1987) (removal of suspect from the scene of the stop to police headquarters usually marks the point at which an investigative stop becomes a de facto arrest), *cert. denied,* —— U.S. ——, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988); *United States v. Ceballos,* 812 F.2d 42, 49 (2d Cir.1987) (transporting suspect to police station exceeds bounds of *Terry* stop and becomes an unlawful arrest); *Gonzalez,* 763 F.2d at 1133 (forcing suspect to go to police station crosses the line into de facto arrest); *Gonzalez v. City of Peoria,* 722 F.2d 468, 477 (9th Cir.1983) (defendant is arrested when transported to police station and placed in cell or interrogation room even if the purpose of the seizure is investigatory rather than accusatory).

Moreover, a conclusion that Parr was under arrest when he was placed in the patrol car is at odds with several of our prior decisions where far greater restraints were placed on suspects and we nevertheless held that no arrests occurred. *See, e.g., United States v. Buffington,* 815 F.2d 1292, 1300 (9th Cir.1987) (no arrest when defendants "forced from their car and made to lie down on wet pavement at gunpoint"); *United States v. Jacobs,* 715 F.2d 1343, 1345–46 (9th Cir.1983) (per curiam) (no arrest when suspect removed from car at gunpoint and ordered to "prone out" on ground); *United States v. Bautista,* 684 F.2d 1286, 1289–90 (9th Cir.1982) (handcuffing of suspect did not convert stop into an arrest), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983). We conclude that the district court erred in determining that Parr was under arrest when he was placed in the police car. Therefore, the warrantless search and seizure in this case cannot be upheld as incident to arrest.

▆▆▆ The government also argued below that the warrantless search was lawful under the automobile exception to the

---

**2.** We have previously held that a twenty-minute detention in a patrol car, during which time the suspect was observed and questioned, constitutes custodial interrogation. *United States v. Chamberlin,* 644 F.2d 1262, 1267 (9th Cir.1980), *cert. denied,* 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981). Parr was in the patrol car, however, only briefly before the search, and the record discloses no questioning of Parr until after the fruits of the search were uncovered. Had Parr been detained substantially longer before the search occurred, the search may not have been sufficiently contemporaneous with the arrest. *See United States v. Vasey,* 834 F.2d 782, 787–88 (9th Cir.1987) (warrantless search of car conducted thirty to forty-five minutes from time of arrest is not sufficiently contemporaneous to be incident to the arrest).

fourth amendment. Police who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed within the car may make a probing search of compartments and containers. *United States v. Ross*, 456 U.S. 798, 800, 102 S.Ct. 2157, 2160, 72 L.Ed.2d 572 (1982). We conclude, however, that the search of Parr's car and the subsequent seizure of the contents of the gym bag cannot be justified on that ground. We find nothing in the record to support the requisite probable cause that contraband existed. *See United States v. Vasey*, 834 F.2d 782, 788 (9th Cir.1987) (mere suspicion does not give rise to probable cause).

Finally, the government argues for the first time on appeal that the warrantless search may be upheld on a plain view theory stemming from a lawful *Terry* stop. We are foreclosed, however, from affirming the district court's suppression of evidence on a theory not presented below when by doing so we unfairly deprive the defendant of the opportunity to adduce evidence. *See United States v. Salazar*, 805 F.2d 1394, 1399–1400 (9th Cir.1986). We must therefore reverse and remand. If a new trial is held, the government may seek to justify the search on this alternative ground. *See id.* at 1400.

REVERSED and REMANDED.