NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 2 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RYAN OSWALD, Derivatively on Behalf of Nominal Defendant Identiv, Inc., | No. 18-17063 |
| Plaintiff-Appellant, | D.C. No. 3:16-cv-00241-CRB |
| v. | |
| STEVEN HUMPHREYS; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |
| and | |
| IDENTIV, INC., Nominal Defendant, | |
| Defendant. | |

Appeal from the United States District Court
For the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted March 5, 2020
San Francisco, California

Before: WARDLAW, M. SMITH, and BUMATAY, Circuit Judges.

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiff and Identiv, Inc.[1] shareholder Ryan Oswald appeals the district court's order granting the Defendants' Federal Rule of Civil Procedure 12(b)(6) motions to dismiss Oswald's second amended complaint (SAC) and its order denying leave to amend. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

This derivative shareholder action alleges that Identiv's former Chief Executive Officer, Jason Hart, misappropriated company funds, that its former Chief Financial Officer, Brian Nelson, failed to stop that misappropriation, and that the five voting members of Identiv's Board of Directors terminated the investigation into Hart's conduct prematurely—all in violation of their fiduciary duties of loyalty. The Board's $3-million investigation into Hart's conduct lasted about four months and revealed that Identiv had reimbursed Hart for at least $164,000 in non-business personal expenses and $354,528.36 in possible business expenses incurred in violation of company policy. Some of this money was spent entertaining a U.S. Marshal, raising potential bribery concerns. Two members of the Board—Steven Humphreys and Gary Kremen—participated in or benefitted from Hart's alleged misconduct. As a result of these findings, the Board demoted Hart and Nelson and required Hart to pay $35,784 in remediation. However, the

---

[1] Identiv is a security technology corporation incorporated under the laws of Delaware.

Board concluded that it "did not find any intentional illegal acts" and terminated the investigation, against the recommendation of Identiv's independent auditor, outside counsel, and outside accounting firm.

1. The district court did not err in dismissing the SAC as to Hart and Nelson because Oswald failed to establish demand futility as to his claims against them—which did not arise from Board action. A shareholder must make a formal demand on the corporation's board to pursue a cause of action, or else plead particularized facts demonstrating that demand is futile and therefore legally excused. Fed. R. Civ. P. 23.1. In its prior demand futility order, the district court held that demand was futile as to Oswald's claim that the Board's decision to end the investigation was a breach of fiduciary duty because the facts "support a reasonable doubt" that this decision "was the product of a valid exercise of business judgment," *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). However, the district court later clarified, correctly, that demand was not futile as to Oswald's claims against Hart and Nelson.

That Hart and Nelson's conduct was the subject of the Board's investigation does not alter this conclusion. "Demand futility analysis is conducted on a claim-by-claim basis," *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004), and

3

Hart and Nelson simply were not involved in the decision to end the investigation. Moreover, claims that do not challenge an action of the corporation's board are subject to a different demand futility test than claims that do. *Id.* at 977; *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993) (claims that do not challenge a board action must allege facts that "create a reasonable doubt" that the board "could have properly exercised its independent and disinterested business judgment in responding to a demand").

2.   Nor did the district court err in dismissing the claims against the Board. To survive a Rule 12(b)(6) motion to dismiss, Oswald must allege facts sufficient to rebut the business judgment rule and avoid Identiv's exculpatory clause. *See* 8 Del. C. § 102(b)(7); *McPadden v. Sidhu*, 964 A.2d 1262, 1273 (Del. Ch. 2008); *Ryan v. Gifford*, 918 A.2d 341, 356 (Del. Ch. 2007).  To do so, the facts alleged must demonstrate that the Board's decision to end the investigation was the product of bad faith.  Bad faith includes "fiduciary conduct motivated by an actual intent to do harm," *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 64 (Del. 2006), conduct where "the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties," *id.* at 67 (citation omitted).

4

The district court's demand futility order concluded that Oswald raised a reasonable doubt that the Board acted in good faith in its decision to end the investigation. Generally, it would follow *a fortiori* that Oswald had also sufficiently alleged bad faith for purposes of Rule 12(b)(6). *See Ryan*, 918 A.2d at 357. However, the district court reconsidered its earlier demand futility finding in its order granting the Defendant's motion to dismiss, as it is entitled to do. *See United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004) ("[A] district court may reconsider its prior rulings so long as it retains jurisdiction over the case."). On second look, the district court held that Oswald failed to adequately allege bad faith against the Board. We agree.

Humphreys and Kremen are the only members of the voting Board whom Oswald asserts participated in or benefitted from Hart's alleged misconduct, and, according to Oswald's own allegations, their involvement was disclosed to the Board during the course of the investigation. Thus, the allegations do not support a finding that any voting Board member had a personal interest in terminating the investigation prematurely. *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d at 67.

In addition, Oswald cites no authority establishing that the Board had a "known duty" to further investigate whether a crime had been committed. *See id.* (intentional failure to act pursuant to a known duty can constitute bad faith). For

5

purposes of bad faith, "[t]he proper inquiry is not whether a director neglected to do all that they should have under the circumstances . . . but rather whether the director 'knowingly and completely failed to undertake their responsibilities.'" *DiRienzo v. Lichtenstein*, 2013 WL 5503034, at *13 (Del. Ch. Sept. 30, 2013) (quoting *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243–44 (Del. 2009)). The Board's investigation spanned four months and costed $3 million, but it uncovered only about $500,000 in improper expenses. Outside counsel and auditors reviewed Identiv's books and records and presented their findings to the Board, including their recommendation to investigate further. The Board members' decision to end the investigation at this point does not suggest that they "completely failed to undertake their responsibilities," *id.* At worst, their decision amounted to gross negligence, which is exculpated conduct. *See McPadden*, 964 A.2d at 1272–73 (finding the Board's decision to approve a sale was grossly negligent because the Board evidently failed to consider known, material information that called the sale process into question).

3. The district court did not abuse its discretion in denying leave to amend because Oswald's proposed third amended complaint did not cure the deficiencies in his demand futility or bad faith allegations. *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (standard for leave to amend).

**AFFIRMED.**

6