UNITED STATES of America,
Plaintiff,

v.

Roque S. NORITA and Julita
A. Sablan, Defendants.

Criminal Case No. 09–00026.

United States District Court,
D.N. Mariana Islands.

April 2, 2010.

James J. Benedetto, U.S. Department of Justice, Saipan, MP, for Plaintiff.

Bruce L. Berline, Law Office of Bruce Berline, G. Anthony Long, Law Office of G. Anthony Long, Saipan, MP, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING THE PROSECUTION'S MOTION TO DISMISS INDICTMENT

### *FILED UNDER SEAL*

MARK W. BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................. 1045
 A. The Indictment ........................................... 1045
 B. The Discovery Dispute .................................... 1046
 C. The Motion To Dismiss ................................... 1048

II. LEGAL ANALYSIS .............................................. 1049
 A. Rule 48 .................................................. 1049
 B. Law Of The Case And Authority To Reconsider ............. 1051
 C. Reconsideration Of Orders Compelling Production Of Manuals ........... 1052
 1. Rule 16(a)(1)(E) .................................... 1053
 2. Materiality of the manuals ......................... 1054
 D. Mootness Of The Motion To Dismiss ...................... 1055

III. CONCLUSION ................................................ 1055

In this criminal case, involving charges of trafficking in methamphetamine against both defendants and a gun charge against one defendant, the prosecution has moved to dismiss the indictment rather than produce certain DEA operations manuals, in their entireties, as the prosecution was ordered to do as a sanction for failure to produce pertinent portions of the manuals in response to prior orders compelling pro-

duction. Although the defendants understandably consent to dismissal, if it is with prejudice, the court finds that dismissal of the indictment is not necessarily appropriate in the circumstances presented here. Therefore, this matter will proceed to trial as scheduled on April 12, 2010.

## I. INTRODUCTION

### A. The Indictment

In a Second Superseding Indictment (docket no. 81), handed down February 25, 2010, defendants Roque S. Norita and Julita A. Sablan were charged with the following offenses:

**Count 1** charges that, from a date unknown, but on or about August of 2008, and continuing through about July 28, 2009, defendants Norita and Sablan conspired, with each other and with others known and unknown to the Grand Jury, to distribute methamphetamine and to possess methamphetamine, that is, methamphetamine hydrochloride and d-methamphetamine hydrochloride ("ice"), with intent to distribute it, all in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2;

**Count 2** charges that, on or about February 19, 2009, defendants Norita and Sablan knowingly and intentionally possessed 0.050 net grams of methamphetamine hydrochloride, with intent to distribute it, and, at the time, defendant Norita was within 1,000 feet of a school, namely the Gregorio T. Camacho Elementary School in San Roque Village, all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), 860(a) and (b), 18 U.S.C. § 2, and Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946);

**Count 3** charges that, on or about February 19, 2009, defendants Norita and Sablan knowingly and intentionally possessed 0.062 net grams of methamphetamine hy-

drochloride, with intent to distribute it, and, at the time, defendant Norita was on premises on which an individual under the age of 18 years resided, all in violation of 21 U.S.C. §§ 860a, 18 U.S.C. § 2, and Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946);

**Count 4** charges that, on or about February 25, 2009, defendant Sablan knowingly and intentionally possessed 1.1 actual grams of d-methamphetamine hydrochloride ("ice"), with intent to distribute it, and, at the time, defendant Sablan was within 1,000 feet of a school, namely Tanapag Elementary School, and was also on premises on which an individual under the age of 18 years resided, all in violation of 21 U.S.C. §§ 860(a) and (b), 860a, and 841(b)(1)(C);

**Count 5** charges that, on or about July 27, 2009, defendant Sablan knowingly and intentionally possessed 0.11 actual grams of d-methamphetamine hydrochloride ("ice"), with intent to distribute it, and, at the time, defendant Sablan was at Candi Poker in Tanapag Village, within 1,000 feet of a school, namely Tanapag Elementary School, all in violation of 21 U.S.C. §§ 860(a) and (b), and 841(b)(1)(C);

**Count 6** charges that, on or about July 28, 2009, defendant Sablan knowingly and intentionally possessed 0.070 net grams of methamphetamine hydrochloride, with intent to distribute it, at Banana Beach in Tanapag Village, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C);

and **Count 7** charges that, on or about March or April of 2009, defendant Norita, during and in relation to a drug-trafficking crime, knowingly used a firearm, namely a .223 caliber Armalite Model M 15A2 rifle, serial number US48714, by trading it for methamphetamine, all in violation of 18 U.S.C. § 924(c)(1)(A).

These charges against Norita and Sablan are set for a jury trial before the undersigned, as a visiting judge, beginning on April 12, 2010.

### B. The Discovery Dispute

On December 8, 2009, in the pertinent part of a ruling on the defendants' prior discovery motions and motions to compel, the court ordered as follows:

10. The Government shall obtain the section of the Laboratory Operations Manual applicable to the testing of methamphetamine and d-methamphetamine hydrochloride and promptly produce it to the defense.

11. The Government shall obtain the section of the DEA Agent's Field Manual pertaining to the use of confidential informants and shall promptly produce it to the defense.

Order on Defendants' Discovery Motions and Defendants' Motions to Compel (docket no. 45), 1–3.

On January 22, 2010, in the pertinent part of another ruling on pretrial motions, the court ruled as follows:

### I. Motion for Reconsideration.

The United States of America asks the Court to reconsider its previous order that the government produce a copy of the "Laboratory Operations Manual applicable to the testing of methamphetamine and d-methamphetamine hydrochloride" and "the sections of the DEA Agent's Field Manual pertaining to the use of confidential informants." (*See* Order on Defendants' Discovery Motions, 12/08/2009.) Federal Rule of Criminal Procedure 16(a)(1)(E) provides that "Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and ... the item is material to preparing the defense,...." The government urges the court to reconsider its ruling because the laboratory manual and the agent manual are not material to the defense, the material may be privileged, and Defendant may be able to access the manual through other means. The Court is not convinced that the manuals are irrelevant, that they are privileged or that they are accessible to the public. Accordingly, the motion for reconsideration is DENIED and the information shall be produced as ordered in the Court's previous order.

Order Denying The Government's Motion For Reconsideration, Denying Defendants' Motions For A Bill Of Particulars, Denying In Part And Granting In Part Defendants' Motions To Dismiss, And Granting Defendants' Motion To Sever (docket no. 80), 2–3.

Despite having twice been ordered to produce the sections of the manuals in question, the defendants contend that the prosecution did not do so, or did not do so adequately and completely. Instead, on February 19, 2010, the prosecution responded to the orders to compel production by e-mailing the defendants a Declaration of Elizabeth Pascual, which contained the information from the DEA Laboratory Operations Manual that the prosecution contended was responsive to the court's Order, and promised to produce pertinent portions of the Agent's Field Manual within the next week or so. Declaration Of Counsel For Defendant Sablan Supporting Pretrial Motions (docket no. 93), Exhibit A; Declaration Of [Counsel] In Support Of Defendant Roque Norita's Motion For Sanctions

For Failing To Disclose Discovery Previously Ordered (docket no. 95), Exhibit C.

In the declaration attached to the prosecution's e-mail, Ms. Pascual referred to language in an order to compel in *United States v. Huang*, Criminal Case No. 09–00014, that required the United States to produce "a copy of the DEA Laboratory Operations Manual regarding the procedures and standards *to be utilized* in the testing of methamphetamine and d-methamphetamine hydrochloride"—not to the language of either of the orders in this case quoted above. Declaration of Elizabeth Pascual, unnumbered paragraph 2 (emphasis added). Ms. Pascual then averred that substances thought to be controlled substances are treated as unknown substances in DEA laboratories and that DEA forensic chemists (FCs) have discretion in the manner and sequence in which they analyze such substances. *Id.* at unnumbered paragraph 3. She also explained that there is no one document that contains all of the "procedures and standards to be utilized in the testing of methamphetamine and d-methamphetamine hydrochloride." *Id.* Finally, she opined, as follows:

> Based upon my almost decade long familiarity with the *LOM* and based upon conversations specifically occasioned by the court's order that I have had with SF [ (Office of Forensic Sciences) ] colleagues, I know that to the extent such methamphetamine "procedures and standards" appear at all in the DEA *Laboratory Operations Manual* (LOM), it [sic] is contained in two sentences at paragraph 7002.2D: "Determination of optical isomeric form (e.g., destropropoxyphene) will be performed whenever statutory considerations, sentencing guidelines, or control status would be affected. For further information on the determination of optical isomeric forms of methamphetamine, review the

LS–05–002 *Reporting Methamphetamine Enantiomers.*"

Declaration of Elizabeth Pascual, unnumbered paragraph 3.

Despite a promise in the prosecution's February 19, 2010, e-mail to produce the DEA Agent's Field Manual within a week or so, it was not until March 17, 2010, that the prosecution finally produced redacted sections of that manual.

In the pertinent part of a Memorandum Opinion And Order Regarding Defendants' Pretrial Motions (docket no. 123), filed March 29, 2010, 708 F.Supp.2d 1056 (D.N.Mar.I.2010), addressing the defendants' motions for sanctions for failure to produce the pertinent portions of either manual as ordered by the court, the undersigned concluded that Ms. Pascual's justifications for production of such limited portions of the Laboratory Operations Manual was premised on a quite narrow interpretation of language in an order in another case, not the language of the orders compelling production in this case, and that the prosecution had recognized that it would have to produce the Laboratory Operations Manual in its entirety for the manual to serve the purpose for which the defendants imagined that it would. The undersigned also concluded that it was appropriate to ensure obedience to the court's prior orders compelling production of pertinent sections of the Laboratory Operations Manual, particularly where the prosecution had twice been ordered to do so. The undersigned also concluded that the defendants had made a "reasonable" showing of prejudice from the prosecution's failure to produce the Laboratory Operations Manual in the form of a credible contention that the failure to produce the documents as ordered had effectively impaired their defenses, in that it had prevented the defendants from reviewing

and analyzing the material, effectively preparing for cross-examination of the prosecution's expert, or challenging the admissibility of the alleged contraband. The court rejected the prosecution's argument that the defendants could not be prejudiced by the prosecution's failure to produce the Laboratory Operations Manual, because that manual was purportedly available through a public website for the National Criminal Defense Lawyers' Association (NCDLA), because the defendants were not necessarily able to access the same version of the manual currently in use or even to verify that the version on the website was the same version as the one currently in use, and because the court had previously rejected that argument.

Similarly, the undersigned determined that the defendants' purported ability to obtain the Agent's Field Manual from the NCDLA website was no excuse for failure to produce the pertinent portions of that manual as required by prior court orders. The court also noted that the defendants had pointed to inconsistencies between the section numbers of the redacted portions of the Agent's Field Manual that the prosecution had belatedly produced and section numbers of purportedly similar sections that had been gleaned from other sources.

The undersigned determined in its March 29, 2010, sanctions order that the appropriate sanction for the prosecution's failure to comply with prior orders to produce the pertinent portions of the Laboratory Operations Manual and the Agent's Field Manual was to require the prosecution to produce, by April 1, 2010, both manuals, in their entireties, subject to confidentiality requirements imposed by the court. The undersigned also indicated that if timely production of the manuals, in their entirety, did not occur, the court would consider further sanctions, including striking exhibits or witnesses.

## C. The Motion To Dismiss

In a Motion To Dismiss Indictment, a courtesy copy of which the undersigned received on the morning of April 1, 2010,[1] undersigned's local time, the prosecution seeks dismissal of the Indictment in this case pursuant to Rule 48 of the Federal Rules of Criminal Procedure, representing that it will not refile the criminal charges in this case and that it is not opposed to dismissal of the Indictment with prejudice. The prosecution explains that, after extensive consultation with DEA Division Counsel and agency officials in Washington, D.C., the prosecution respectfully declines to produce the manuals, for all of the reasons previously stated on the record, and would prefer to dismiss the charges against these defendants, rather than disclose the manuals.

More specifically, the prosecution noted that, in opposing the motion for sanctions, the prosecution had asked the court to reconsider the prior rulings compelling production of portions of the manuals, particularly portions of the Agent's Field Manual, on the ground that they contained sensitive information disclosure of which could undermine the DEA's investigative mission, and quite possibly endanger the lives of agents in the field. Now, the prosecution argues that DEA officials and the United States Attorney's Office are convinced that producing the Agent's Field Manual creates an unacceptable risk that the information contained therein will be further disseminated, potentially endangering agents and confidential sources in the field. The prosecution argues that, if the entire, unredacted Agent's Field Manual became public, drug traffickers could

---

1. The Motion To Dismiss had not yet been filed, because of the pendency of a motion to seal the motion to dismiss, which has now been granted.

devise "tests" to determine whether their customers and associates are DEA confidential sources or undercover agents and the disclosure could, in effect, reveal the DEA's "game plan," permitting drug traffickers to frustrate investigations now and in the future. Also, notwithstanding the court's confidentiality requirements, the prosecution thinks it is prudent to prevent any opportunity for the information contained in the Agent's Field Manual to become public in any form. Thus, the prosecution asserts that, in its view, the public interest in protecting agents and confidential sources and ensuring that investigations are not compromised outweighs the public interest in convicting two individual defendants. The prosecution also asserts that it has "wide latitude" to make decisions about initiating and terminating prosecutions and that, as a consequence, the determination of the public interest, in the first instance, is for the prosecution to make.

The prosecution represents that its Motion To Dismiss is uncontested, and that is true, at least to the extent that the defendants do not oppose dismissal. In courtesy copies of responses provided to the court by e-mails dated April 1, 2010,[2] the defendants focus their responses, however, on their assertions that any dismissal must be with prejudice. They also preserve their opposition to the prosecution's characterization of the discovery orders and asserted reasons for not wanting to comply with the court's discovery orders. Defendant Norita also reserves the right to assert that the various motions and supporting documents pertaining to this issue apply to the severed "felon in possession of a firearm" counts, now in Criminal Case No. 10–00030. The defendants also assert their belief that the dismissal of the indictment moots the need for any responses to pending motions or other trial preparations, such as responses to the court's latest version of Proposed Jury Instructions.

Although the court would certainly have entertained oral arguments on the prosecution's Motion To Dismiss The Indictment under ordinary circumstances, the time difference between the undersigned's regular place of assignment, Sioux City, Iowa, and Saipan, and the urgency of resolving the matter of whether or not this case is going to trial as scheduled have precluded oral arguments prior to the issuance of the ruling on the Motion To Dismiss The Indictment in this case.

## II. LEGAL ANALYSIS

### A. Rule 48

Under Rule 48(a) of Federal Rules of Criminal Procedure, "the government may, with leave of the court, dismiss an indictment ...." (emphasis added). As the Ninth Circuit Court of Appeals has explained, "[T]he only way for the government to achieve dismissal is via leave of the court." *United States v. Hickey,* 580 F.3d 922, 929 (9th Cir.2009). As the Ninth Circuit Court of Appeals has also recognized,

> Rule 48 also recognizes the traditional balance between judicial and executive power by limiting the district court's supervisory powers over prosecutorial charging decisions. Under Rule 48, courts must grant leave to the government to dismiss an indictment, information, or complaint unless dismissal is

---

**2.** The defendants' responses apparently could not be filed until the prosecution's motion to dismiss was filed, and the prosecution's motion to dismiss could not be filed until the court ruled on the motion to seal that motion.

In the order granting leave to file the motion to dismiss under seal, the court also directed that the defendants' responses be filed under seal.

"clearly contrary to manifest public interest." *Rinaldi v. United States*, 434 U.S. 22, 30, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (per curiam); *United States v. Garcia–Valenzuela*, 232 F.3d 1003, 1008 (9th Cir.2000) (discussing the "clearly contrary to manifest public interest" standard). "The decision to dismiss an indictment implicates concerns that the Executive is uniquely suited to evaluate, and a district court should be reluctant to deny its request." *United States v. Gonzalez*, 58 F.3d 459, 462 (9th Cir. 1995).

*In re Ellis*, 356 F.3d 1198, 1209–10 (9th Cir.2004). The requirement of leave of court in Rule 48(a) "represents a departure from the common law, under which the government had an almost unfettered right to enter a nolle prosequi." *Garcia–Valenzuela*, 232 F.3d at 1007. "[T]he Supreme Court has found that the principal purpose of the leave-of-court requirement is 'to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection.'" *Id.* at 1008 (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n. 15, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977)). Consequently,

> Where a defendant consents to the government's move to dismiss, it is not clear that the district court has any discretion to deny the government's motion. The Supreme Court reserved judgment on this question in *Rinaldi*, and our circuit has also refrained from stating a general rule. The only standard that we have recognized as possibly being appropriate to such cases is "whether the motion was clearly contrary to manifest public interest." *Gonzalez*, 58 F.3d at 462 (internal quotation marks omitted).

*Garcia–Valenzuela*, 232 F.3d at 1008. Whether the prosecution's motion to dis-

miss is made in "good faith" is also "of fundamental importance in deciding whether to grant leave of court under Rule 48(a)." *Id.* Although the Ninth Circuit Court of Appeals has not decided whether a district court has discretion to deny an uncontested motion to dismiss under any circumstances, it has made clear that, if such power exists when the motion is uncontested, it must be exercised in narrow and exceptional circumstances in which dismissal is "clearly contrary to manifest public interest" and, indeed, may indicate a "betrayal of the public interest." *Gonzalez*, 58 F.3d at 461.

These standards would give the court considerable pause, were the only question whether or not the court should grant an uncontested motion to dismiss the indictment in this case. However, where the prosecution's *only* ground for dismissal of the indictment is its determination that it will not comply with an order to compel production of certain materials, in their entirety, as a sanction for failure to produce pertinent portions of those materials, the court finds that the question *ante* to consideration of the prosecution's motion to dismiss is whether the underlying orders to compel with which the prosecution had not complied should be reconsidered. This course is all the more appropriate, where the undersigned is a visiting judge, and out of deference to the judge who entered the prior orders to compel, and the principle of "law of the case," the undersigned restricted his consideration of the parties' discovery dispute to the question of whether or not sanctions should be imposed for non-compliance with prior orders to compel, instead of reconsidering the merits of the orders to compel. Under these circumstances, the court finds that it should first reconsider the orders to compel, under the appropriate standards for reconsideration of such orders. If the court finds, on reconsideration, that the

prosecution is not required to produce the materials in question, either in pertinent part or in their entirety, then the ground for the prosecution's motion to dismiss is removed, and that motion is moot.

The court turns, therefore, to a brief examination of the standards for reconsideration of an order compelling production in a criminal case.

## B. Law Of The Case And Authority To Reconsider

The Ninth Circuit Court of Appeals has explained,

"Under the 'law of the case' doctrine, a court is ordinarily precluded from re-examining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir.1988) (citations omitted). The doctrine is "a judicial invention designed to aid in the efficient operation of court affairs," *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir.2000) (quoting *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir.1990)), and is "founded upon the sound public policy that litigation must come to an end," *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir.2002), *cert. denied*, 540 U.S. 1016, 124 S.Ct. 566, 157 L.Ed.2d 429 (2003). Further, the doctrine serves to advance the "principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided." *United States v. Houser*, 804 F.2d 565, 567 (9th Cir.1986) (citation omitted). Notably, "[i]ssues that a district court determines during pretrial motions become law of the case." *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir.2004) (citation omitted) *cert. denied*, 543 U.S. 980, 125 S.Ct. 479, 160 L.Ed.2d 358 (2004).

The law of the case doctrine is "not an inexorable command," *Hanna Boys Center v. Miller*, 853 F.2d 682, 686 (9th Cir.1988) (citation omitted), nor is it "a limit to [a court's] power." *Houser*, 804 F.2d at 567–568. Rather, "[a]pplication of the doctrine is discretionary." *Lummi Indian Tribe*, 235 F.3d at 452; *see also Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir.2000) (stating that the "doctrine is highly flexible") (citation omitted); *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir.1999); *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir.1995) ("A judge may reexamine his earlier ruling ... if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it.") (citation omitted); Moore's Federal Practice § 134.21[1] (3d ed. 2003) ("When a court applies the law of the case doctrine to its own prior decisions ... the traditional formulations of the doctrine must be conceived as rules of thumb and not as straightjackets on the informed discretion and sound practical judgment of the judge").

The law of the case doctrine is "wholly inapposite" to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction. *See [City of Los Angeles, Harbor Div. v.] Santa Monica Baykeeper*, 254 F.3d [882] at 888 [ (9th Cir. 2001) ]. In *Santa Monica Baykeeper*, the district court *sua sponte* reconsidered its own order certifying for interlocutory appeal the denial of a motion to dismiss. *Id.* at 884. We were asked to assess whether the court's reconsideration of its order violated the law of the case doctrine. *Id.* Our analysis emphasized the importance in law of the case doctrine jurisprudence of distinguishing

between a district court's consideration of its own prior decision and the directive of a higher court:

> The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court. *All rulings of a trial court are subject to revision at any time before the entry of judgment.* A trial court may not, however, reconsider a question decided by an appellate court.

*Id.* at 888–89 (quoting, with emphasis added, *Houser*, 804 F.2d at 567). Accordingly, we determined that "[t]he doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." *Id.* at 888 (citing *Houser*, 804 F.2d at 567). Because the *Baykeeper* district court had rescinded its own prior order, over which it retained jurisdiction, we resolved that the court did not violate the law of the case doctrine. *Id.* at 889.

Just as in *Santa Monica Baykeeper,* the district court reconsidered its own order, over which its jurisdiction had not yet been divested. Therefore, under the authority of *Santa Monica Baykeeper,* the district court did not violate the law of the case doctrine. A survey of our sister circuits' application of the law of the case doctrine provides additional support for this conclusion. *See Avitia,* 49 F.3d at 1227; *Prisco,* 168 F.3d at 607; *see also* Moore's Federal Practice § 134.21[1] (3d ed.2003).

*United States v. Smith,* 389 F.3d 944, 948–49 (9th Cir.2004).

While the "law of the case" doctrine does not limit a district court's power to reconsider its own interlocutory orders, whether or not to depart from the "law of the case" is a matter of discretion. The Ninth Circuit Court of Appeals has also explained, "A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir.1997). More pointedly, "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.*

 Here, the orders compelling discovery were entered by the same court, at the trial level, albeit by a different judge, not by an appellate court. *Smith,* 389 F.3d at 948–49. Thus, both of this court's prior rulings compelling discovery of the manuals at issue and this court's ruling imposing sanctions for failing to comply with the orders compelling discovery, like all other rulings of a trial court, are subject to revision at any time before the entry of judgment. *Id.* Moreover, the trial court's prior discovery orders have never been appealed, so that this court has never been divested of jurisdiction. *Id.* Therefore, the "law of the case" doctrine does not, in any way, impinge upon this court's power to reconsider those interlocutory orders. *Id.* The real question, then, is whether the court should exercise its discretion to reconsider and set aside those orders. *Alexander,* 106 F.3d at 876. The court concludes that it should do so, because the prior decisions were not only "clearly erroneous," but enforcing them would result in a "manifest injustice." *Id.*

### C. Reconsideration Of Orders Compelling Production Of Manuals

Although the undersigned certainly would not have ordered production of the

requested parts of either of the manuals at issue in the first place, that is not the standard. The question is, were the orders to compel production of those manuals or parts of the manuals "clearly erroneous," not just a matter of a difference of opinion between judges. *Id.* With all due respect to the judge who entered the prior orders, they were "clearly erroneous."

### 1. Rule 16(a)(1)(E)

Rule 16 of the Federal Rules of Criminal Procedure provides for the production of documents and objects, as follows:

> **(E) Documents and Objects.** Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> > **(i)** the item is material to preparing the defense;
> >
> > **(ii)** the government intends to use the item in its case-in-chief at trial; or
> >
> > **(iii)** the item was obtained from or belongs to the defendant.

FED.R.CRIM.P. 16(a)(1)(E) (formerly FED. R.CRIM.P. 16(a)(1)(C)). In litigating the discovery of the manuals, the parties focused on whether the manuals are "items material to preparing the defense." FED. R.CRIM.P. 16(a)(1)(E)(i).

■ The Ninth Circuit Court of Appeals has explained the meaning of "material" within the meaning of former Rule 16(a)(1)(C), now Rule 16(a)(1)(E) as follows:

> In *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), the Supreme Court considered the parameters of Fed.R.Crim.P. 16(a)(1)(C) and ruled that defendants are entitled to the discovery of only those materials that are relevant to the defendant's response to the Government's case in chief:
>
> > While it might be argued that as a general matter, the concept of a "defense" includes any claim that is a "sword," challenging the prosecution's conduct of the case, the term may encompass only the narrower class of "shield" claims, which refute the Government's arguments that the defendant committed the crime charged. Rule 16(a)(1)(C) tends to support the "shield-only" reading. If "defense" means an argument in response to the prosecution's case in chief, there is a perceptible symmetry between documents "material to the preparation of the defendant's defense," and, in the very next phrase, documents "intended for use by the government as evidence in chief at the trial."
>
> *Id.* at 462, 116 S.Ct. 1480. Under *Armstrong,* the [defendants] are entitled to the discovery of only those materials relevant to the charges [against them].

*United States v. Chon,* 210 F.3d 990, 995 (9th Cir.2000). In *Chon,* because the discovery request was "considerably broader" and the materials in question "do not serve the purpose of fortifying the appellants' 'shield claims,'" the district court properly denied the defendants' discovery requests. *Id.* To put it another way, evidence is material under Rule 16 if it is relevant to the development of a possible defense. *United States v. Olano,* 62 F.3d 1180, 1203 (9th Cir.1995). However, conclusory assertions of the existence and materiality of additional documents are insufficient to satisfy the materiality requirement. *United States v. Little,* 753 F.2d 1420, 1445 (9th Cir.1984).

### 2. *Materiality of the manuals*

 The undersigned concludes that there has simply been no sufficient showing that the DEA Agent's Field Manual is "material" within the meaning of Rule 16(a)(1)(E). Beyond conclusory assertions that the Agent's Field Manual will help to cross-examine agents and confidential informants in this case, which are not enough, *see Little*, 753 F.2d at 1445, the defendants have made no showing that the Agent's Field Manual will "'refute the Government's arguments that the defendant[s] committed the crime[s] charged.'" *Chon*, 210 F.3d at 995 (quoting *Armstrong*, 517 U.S. at 462, 116 S.Ct. 1480). Thus, the Agent's Field Manual "do[es] not serve the purpose of fortifying [the defendants'] 'shield claims.'" *Id.* The defendants have already been provided with sufficient discovery concerning the confidential informants and the circumstances of the confidential informants' contacts with the defendants for the defendants to attempt to refute the proof those agents and informants may offer that the defendants committed the crimes charged. Similarly, the undersigned concludes that there is simply no showing, beyond conclusory assertions, that the Laboratory Operations Manual will "'refute the Government's arguments that the defendant[s] committed the crime[s] charged,'" *id.* (quoting *Armstrong*, 517 U.S. at 462, 116 S.Ct. 1480), because the tests performed determine whether or not the substances at issue are what the prosecution claims they are, and hence, whether or not the defendants are guilty of the crimes charged, not the procedures outlined in the Laboratory Operations Manual. The defendants have now been provided with adequate disclosure of the tests performed by the prosecution's experts on the alleged controlled substances and the results of those tests to address material issues.

Thus, the court cannot find that the manuals at issue were material in the first place or that production of any more of the manuals than the defendants have already received is required by Rule 16(a)(1)(E).[3] Thus, the orders to compel and for sanctions for failure to comply with the orders to compel were "clearly erroneous." *Alexander*, 106 F.3d at 876 (one ground for reconsideration is prior order was "clearly erroneous"). Similarly, to allow the orders compelling production of the manuals and imposing sanctions for failing to produce them to stand, when the orders were based on the erroneous conclusion that disclosure was required by Rule 16(a)(1)(E), would result in a manifest injustice, compounded by the unnecessary dismissal of criminal charges for which a grand jury has found probable cause. *See id.* (another ground for reconsideration is that the prior order would result in a "manifest injustice").

---

**3.** Despite the prosecution's invitation to do so, the court will not address the prosecution's assertions that disclosure of the Agent's Field Manual creates an unacceptable risk that the information contained therein will be further disseminated, potentially endangering agents and confidential sources in the field. First, it is difficult to reconcile the prosecution's argument that disclosure of the Agent's Field Manual is inherently dangerous—indeed, that the Agent's Field Manual is highly "sensitive"—with the prosecution's argument that discovery of the Agent's Field Manual is not required, because it is publically available on the website of the National Criminal Defense Lawyers' Association. Second, the prosecution's failure to request an *ex parte* and *in camera* review of the Agent's Field Manual by the court to determine what parts might be too sensitive to disclose, and the prosecution's explicit assertion that the confidentiality limitations that the court imposed in its sanctions order are inadequate, suggest a troubling aspersion on the ability of either federal judges and defense attorneys generally, or this judge and these defense attorneys in particular, to recognize and adhere to confidentiality requirements.

Therefore, prior orders requiring production of all or certain parts of the Laboratory Operations Manual and the Agent's Field Manual will be vacated and set aside.[4]

### D. Mootness Of The Motion To Dismiss

 Again, the prosecution's *only* ground for dismissal of the indictment is its determination that it will not comply with an order to compel production of the manuals at issue here—and, more specifically, that it will not produce the Agent's Field Manual. Because the court finds, on reconsideration of the discovery and sanctions orders, that the prosecution is not required to produce the materials in question, either in pertinent part or in their entirety, then the ground for the prosecution's motion to dismiss is removed, and the motion is moot. To put it another way, where the circumstances on which the prosecution's motion to dismiss no longer stand, there is no longer any public interest supporting the prosecution's motion to dismiss, and dismissal of the Second Superseding Indictment is "clearly contrary to the public interest." *In re Ellis*, 356 F.3d at 1209–10 (denial of the prosecution's motion to dismiss is only appropriate if the dismissal is "clearly contrary to the manifest public interest"). This case, thus, falls within the narrow range of exceptional circumstances in which the court may deny an unresisted motion to dismiss the indictment. *Gonzalez*, 58 F.3d at 461.

If the prosecution reurges its motion to dismiss after the discovery and sanctions orders requiring production of all or parts of the Laboratory Operations Manual and Agent's Field Manual have been vacated, the court would have to consider the motion to dismiss on the merits. In doing so, however, the court would have to consider whether the prosecution's persistence was based on some ulterior motive, other than its presently stated ground for seeking dismissal and, consequently, whether the dismissal was in "good faith." *See Garcia–Valenzuela*, 232 F.3d at 1008 (whether the prosecution's motion to dismiss is made in "good faith" is "of fundamental importance in deciding whether to grant leave of court under Rule 48(a)").

### III. CONCLUSION

Upon the foregoing,

1. Those parts of the court's December 8, 2009, Order on Defendants' Discovery Motions and Defendants' Motions to Compel (docket no. 45), January 22, 2010, Order Denying The Government's Motion For Reconsideration, Denying Defendants' Motions For A Bill Of Particulars, Denying In Part And Granting In Part Defendants' Motions To Dismiss, And Granting Defendants' Motion To Sever (docket no. 80), and March 29, 2010, Memorandum Opinion And Order Regarding Defendants' Pretrial Motions (docket no. 123) compelling production of all or parts of the Laboratory Operations Manual or Agent's Field Manual are **vacated and set aside** upon reconsideration;

2. Consequently, the prosecution's April 1, 2010, Motion To Dismiss Indictment is **denied as moot.**

---

4. If the defendants are acquitted, they clearly will not assert that they were prejudiced by the failure of the prosecution to produce the manuals or by the court's refusal to sanction the prosecution for failing to produce them, but the interests of justice and the public interest will have been served by bringing the case to trial. If the defendants are convicted, they will have the opportunity to challenge this ruling, post-trial or on appeal, on the grounds that the manuals were "material" and that the defendants were prejudiced by the court's refusal to compel production of the manuals or to impose sanctions for failure to produce them.

FURTHERMORE, any pretrial deadlines that would have fallen on April 1 or 2, 2010, are **hereby extended to Monday, April 5, 2010.** Similarly, any motion to reconsider this ruling must be filed **not later than Monday, April 5, 2010.** This matter will proceed to trial as scheduled on April 12, 2010.

**IT IS SO ORDERED.**